IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:16-CV-282-D

| | | |
|---|---|---|
| ROBERT COOKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND RECOMMENDATION** |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Robert Cooke ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Nancy A. Berryhill ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that he is not disabled.[1] The case is before the court on the parties' motions for judgment on the pleadings. D.E. 21, 26. Both filed memoranda in support of their respective motions. D.E. 22, 27. The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 19 July 2017 Text Ord. For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same. The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416. The versions of the regulations cited herein are those in effect at the time of issuance of the ALJ's decision at issue on 24 April 2014.

## I. BACKGROUND

### A. Case History

Plaintiff protectively filed applications for DIB and SSI on 29 March 2010, alleging a disability onset date of 15 August 2009. Transcript of Proceedings ("Tr.") 154. The applications were denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 154. Plaintiff appointed counsel to represent him on 28 October 2010. Tr. 180-81. On 12 July 2012, a video hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by his counsel, and a vocational expert ("VE") testified. Tr. 62-84. The ALJ issued a decision denying plaintiff's claims on 9 August 2012. Tr. 154-65. On 1 October 2012, plaintiff's counsel timely requested review by the Appeals Council. Tr. 236, 364. Plaintiff's counsel withdrew from representation of him on 4 September 2013. Tr. 237. On 4 December 2013, the Appeals Council allowed plaintiff's request for review and vacated the ALJ's decision. Tr. 172-73. The Appeals Council also remanded the case to the ALJ with instructions. Tr. 173.

On 27 February 2014, a second hearing was held before the same ALJ who presided at the first hearing. Tr. 48-61. Plaintiff and a VE testified. Tr. 51-61. Plaintiff was not represented by counsel or another representative. On 24 April 2014, the ALJ issued a decision again denying plaintiff's claims. Tr. 10-25. The deadline for seeking review of the decision by the Appeals Council was 18 June 2014. *See* Tr. 7.

On 10 December 2014, plaintiff appointed new counsel to represent him. Tr. 46, 47. This counsel has represented plaintiff on his claims continuously thereafter, including in this appeal.

On 6 January 2015, plaintiff's counsel submitted a letter to the Appeals Council seeking permission to request review of the ALJ's decision after expiration of the deadline for doing so

for good cause, pursuant to the Regulations, 20 C.F.R. §§ 404.911, 416.1411. Tr. 43-44; *see also* Tr. 40 (telefax sheet for letter), 41-42 (copy of letter as re-sent). Counsel's good-cause letter cited a medical-opinion letter dated 29 December 2014 by one of plaintiff's treating psychiatrists, Lunsford King, M.D. (Tr. 39).[2] Counsel submitted a copy of Dr. King's letter around 20 January 2015. *See* Tr. 38. On 14 May 2015, the Appeals Council found good cause for plaintiff's tardiness, allowed plaintiff to request review, and gave him until 8 June 2015 to submit additional information. Tr. 31-37. On 18 May 2016, the Appeals Council admitted as an exhibit (Ex. 24F) a copy of Dr. King's 29 December 2014 letter (Tr. 944), but denied the request for review. Tr. 1, 2, 4, 5.

At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On 22 July 2016, plaintiff's counsel commenced this proceeding for judicial review of the ALJ's 24 April 2014 decision, pursuant to 42 U.S.C. §§ 405(g) (DIB)

---

[2] The text of Dr. King's 29 December 2014 letter reads:

> Robert Cooke is my patient, and has been under my care since 2012. I am familiar with his history and with the functional limitations imposed by his disability. Robert's mental capacity has hindered his understanding of complex legal issues resulting in processing a late appeal regarding SSI denial.
>
> Robert receives ACTT [*i.e.*, Assertive Community Treatment Team] services with CSEUC [*i.e.*, Coastal Southeastern United Care]. I am his acting psychiatrist with the ACT team. He is making progress toward meeting his goals outlined in his Person Centered Plan, however continues to have daily struggles in meeting some of his goals. Robert has a severe and persistent DSM V diagnosis of 297.70 of schizoaffective disorder that seriously impairs his functioning in the home and community. He actively feels spiders and snakes are all around him, coming into his shed where he lives away from his wife and stepdaughter. Robert has significant difficulties maintaining consistent employment at a self-sustaining level. Robert continues to have difficulties performing the range of practical daily living task[s] required for basic adult function in the community. Robert's insight remains poor and he is in need of much direction and reassurance and support.
>
> If I can be of any further assistance, please contact the office at (910) 755-5222 Fax (910) 755-5255.

Tr. 39.

and 1383(c)(3) (SSI).  *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 5); Compl. (D.E. 6).

B.     **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. § 1382c(a)(3)(B).  The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the [R]egulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the [R]egulations; at step four, whether the claimant can perform [his] past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work.
>
> The first four steps create a series of hurdles for claimants to meet. If the ALJ finds that the claimant has been working (step one) or that the claimant's medical

4

impairments do not meet the severity and duration requirements of the [R]egulations (step two), the process ends with a finding of "not disabled." At step three, the ALJ either finds that the claimant is disabled because [his] impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt. P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits at this step.

If the first three steps do not lead to a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ["RFC"], which is "the most" the claimant "can still do despite" physical and mental limitations that affect her ability to work. [20 C.F.R.] § 416.945(a)(1).[3] To make this assessment, the ALJ must "consider all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," including those not labeled severe at step two. *Id.* § 416.945(a)(2).[4]

The ALJ then moves on to step four, where the ALJ can find the claimant not disabled because [he] is able to perform [his] past work. Or, if the exertion required for the claimant's past work exceeds [his] [RFC], the ALJ goes on to step five.

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[5] The Commissioner typically offers this evidence through the testimony of a VE responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

### C. ALJ's Findings

Plaintiff was 49 years old on the alleged onset date of disability and 54 years old on the date of the hearing. *See, e.g.*, Tr. 23 ¶ 7. The ALJ found that plaintiff has a limited education.[6]

---

[3] *See also* 20 C.F.R. § 404.1545(a)(1).

[4] *See also* 20 C.F.R. § 404.1545(a)(2).

[5] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1560(c)(2); 404.929.

[6] Under the Regulations, "limited education" means

> ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or

5

Tr. 24 ¶ 8. He also found that plaintiff had past relevant work as a fast-food cook, tire changer, janitor, motor scooter repairer, labeler, and small engine mechanic. Tr. 23 ¶ 6; *see also* 58-59 (VE's testimony).

The ALJ found that plaintiff met the insured status requirements of the Act through 30 September 2013. Tr. 12 ¶ 1. Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 12 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease, obesity, and mood disorder. Tr. 12 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 13 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[7] with some additional limitations. Specifically, claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently. He can stand, walk, and sit for 6 hours each in an 8-hour workday. Claimant can occasionally stoop. He is limited to simple, routine, repetitive tasks. Claimant can have occasional interaction with co-workers and supervisors, but cannot have significant public interaction.

Tr. 15-16 ¶ 5.

---

skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3).

[7] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 23 ¶ 6. At step five, the ALJ accepted the testimony of the VE and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of inspector/hand packer, switch board assembler, and order caller. Tr. 24 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 15 August 2009, through the date of the decision, 24 April 2014. Tr. 25 ¶ 11.

## II. STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.

1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ's decision should be reversed and this case should be remanded for the award of benefits or, in the alternative, that this case should be remanded for a new hearing on the grounds that the ALJ erred in failing to adequately assist plaintiff in the development of the record and to properly evaluate the opinions of two of his treating

psychiatrists, David A. Joseph, M.D. and Dr. King.[8]  The court will address each contention in turn.

## IV.  ALJ'S DEVELOPMENT OF THE RECORD

### A.  Legal Principles

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record . . . ."  *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986); *see* 20 C.F.R. §§ 404.1512(d), 416.912(d).  "The duty to develop the record is heightened in cases where the claimant is mentally impaired."  *Dervin v. Astrue*, 407 F. App'x 154, 156 (9th Cir. 2010).

To merit remand, the failure to develop the record must be prejudicial to the claimant.  *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).  "'To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result.'"  *Schaller v. Colvin*, No. 5:13-CV-334-D, 2014 WL 4537184, at *8 (E.D.N.C. 18 Aug. 2014) (quoting *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (internal quotation & citation omitted)), *mem. & recomm. adopted*, 2014 WL 4537184, at *2 (11 Sept. 2014).  "'Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.'"  *Id.*, 2014 WL 4537184, at *8 (quoting *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)).

### B.  Analysis

Plaintiff argues that the ALJ failed to adequately develop the record with respect to his mental impairments, particularly in light of the presence of these impairments and his pro se status at the underlying hearing.  The contention is meritless.

---

[8] Although plaintiff states broadly that the ALJ "fail[ed] to accord the opinions of examining and treating physicians appropriate weight" and "to properly evaluate the medical opinions contained in the record," the only opinions he addresses specifically in his three-paragraph argument are those of Dr. Joseph and Dr. King.  Pl.'s Mem. 10.

9

To support his argument, plaintiff cites, in part, to the paucity of treatment records by Dr. King, who apparently succeeded Dr. Joseph as plaintiff's treating psychiatrist. *See*, *e.g.*, Tr. 54. Although Dr. King states in a 26 February 2014 letter (Tr. 937 (p. 1 of Ex. 23F)) considered by the ALJ (Tr. 23 ¶ 5) that he had been treating plaintiff since 2012, the administrative record does not appear to contain any other treatment records by him. While the ALJ found that Dr. King evaluated plaintiff on 24 February 2014 (Tr. 23 ¶ 5), two days before the date of his letter, the comprehensive clinical assessment to which the ALJ apparently alludes (Tr. 938-43) lists a licensed professional counselor associate as the provider (Tr. 938, 942). Plaintiff also cites various findings by the ALJ himself regarding the relative lack of mental health treatment records, including the finding that "following May 2012, the evidence contains no additional mental health treatment records until approximately February 2014. (Exhibits 18F and 23F)." Tr. 19 ¶ 5.

Plaintiff's contention, though, amounts to nothing more than speculation that additional evidence could have been obtained and that it would have materially affected the ALJ's analysis. Indeed, since plaintiff's counsel's appearance on plaintiff's behalf and with the sole exception of Dr. King's 29 December 2014 letter,[9] plaintiff and his counsel have not identified or produced any records from Dr. King or another provider beyond those already before the Appeals Council. Plaintiff nowhere states in his memorandum that any additional records for Dr. King or any other provider even exist.

Plaintiff and his counsel have had ample time to identify and obtain any additional records. As noted, plaintiff appointed his current counsel on 10 December 2014, after the ALJ hearing on 27 February 2014. The Appeals Council gave plaintiff until 8 June 2015 in which to

---

[9] It is unclear whether plaintiff's counsel submitted an additional copy of the 29 December 2014 letter for consideration by the Appeals Council on the merits or whether the Appeals Council itself simply introduced as a new exhibit the copy (Tr. 39) submitted with the good-cause request.

submit additional information. Thus, plaintiff and his counsel had almost six months after counsel entered the case in which to investigate the existence of and obtain additional medical records prior to Appeals Council review.

Even as to the 29 December 2014 letter by Dr. King, most of the information in it was already before the Appeals Council in the form of Dr. King's 26 February 2014 letter. The text of the two letters is the same with the exception of the second sentence in each.[10]

Plaintiff's appeal to this court, of course, provided him and his counsel yet another opportunity to describe or present any heretofore missing medical records.[11] Over two years elapsed from counsel's becoming plaintiff's representative to the filing of plaintiff's motion for judgment on the pleadings and supporting memorandum. Again, though, no additional medical records have been identified or produced.

Plaintiff does not argue and there is no other indication that there was any failure by the ALJ to develop the record in connection with the first hearing, on 12 July 2012, at which plaintiff had counsel. That counsel withdrew on 4 September 2013 after issuance of the first decision and submission of a request for review by the Appeals Council. Notwithstanding the withdrawal, of course, the Appeals Council accepted review and remanded the case on 4 December 2013. *See* Tr. 172-73.

---

[10] The second sentence in the 26 February 2014 letter reads: "He meets the definition of disability under the Americans with Disabilities Act, the Fair Housing Act, and the Rehabilitation Act of 1973." Tr. 937. The full text of the 26 February 2014 letter is set out in section V.C. below. The second sentence in the 29 December 2014 letter (the full text of which is set out in footnote 2 above) reads: "Robert's mental capacity has hindered his understanding of complex legal issues resulting in processing a late appeal regarding SSI denial." Tr. 944.

[11] Remand on the basis of additional medical records would presumably be pursuant to sentence six of 42 U.S.C. § 405(g), including the requirement of showing "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g), sent. 6; *see also id.* § 1383(c)(3) (making § 405(g) applicable in SSI appeals).

The court concludes that plaintiff has failed to show that the ALJ did not adequately develop the record or, if he did fail, that any such failure prejudiced him. The court accordingly rejects plaintiff's challenge to the ALJ's decision on this ground.

## V. ALJ'S ASSESSMENT OF MEDICAL OPINION EVIDENCE

### A. Applicable Legal Principles

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. § 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with

the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

### B. Dr. Joseph's Opinions

Dr. Joseph treated plaintiff from at least April to June 2010 (Tr. 579-81) and again from February to July 2012 (Tr. 839-45, 936). The record contains four progress notes on evaluations of plaintiff apparently conducted by Dr. Joseph himself. Tr. 579 (25 June 2010); 580 (28 May

2010); 581-82 (30 Apr. 2010); 839 (13 Feb. 2012). There are also progress notes on two additional evaluations of plaintiff apparently conducted by a licensed professional counselor associate, signed by her but also by Dr. Joseph. Tr. 842 (7 Mar. 2012); 843-44 (11 Apr. 2012). There is another progress note by the counselor associate which, like the preceding notes by her, list Dr. Joseph as "Staff Name," but does not bear his signature. Tr. 845 (18 May 2012).

Dr. Joseph issued a letter dated 10 July 2012 finding plaintiff to be disabled due to schizophrenia:

> Mr. Cooke has been a patient of mine for about 2 years. He is diagnosed with Schizoaffective Schizophrenia. He has chronic hallucinations that prevent him from function[ing] very well on a job for any length of time. The stress of the job appears to cause him to become psychotic.
>
> My impression is, on a greater than not probability, he is disabled and cannot work.

Tr. 936.

The ALJ gave Dr. Joseph's letter little weight, stating:

I give little, weight, however, to Dr. Joseph's July 10, 2012 letter reporting that claimant's chronic hallucinations prevent him from functioning well on a job for any length of time and that, on a greater probability than not, claimant is disabled and cannot work. (Exhibit 22F)

The ALJ gave four reasons for his determination:

[1] The determination of disability is reserved to the [ALJ]. [2] Moreover, Dr. Joseph's opinion is not supported by claimant's mental health treatment records which do not document observations by professionals that claimant was experiencing hallucinations or responding to internal stimuli. [3] Claimant's mental health treatment records also fail to document significant abnormal mental status findings aside from a depressed mood and affect. (Exhibits 7F, 18F, and 23F) [4] Finally, the degree of limitation in Dr. Joseph's letter is inconsistent with his reports in the treatment notes of GAF[12] scores in the 60's. (Exhibits 7F and 18F)

---

[12] The GAF or Global Assessment of Functioning scale measures a person's overall psychological, social, and occupational functioning. DSM–IV–TR 32. The GAF scale is "intended to be used to make treatment decisions" and has "no direct legal or medical correlation to the severity requirements of social security regulations." *Powell v. Astrue*, 927 F. Supp. 2d 267, 273 (W.D.N.C. 2013). Nonetheless, it may inform the ALJ's judgment as to whether a

14

Tr. 23 ¶ 5.

Each of the reasons relied upon by the ALJ is a proper basis for discounting medical opinions. With respect to the first reason, the ALJ is correct, as previously discussed, that the determination on disability is reserved to the ALJ at the hearing level and ultimately the

---

claimant is disabled. *Kozel v. Astrue*, No. JKS-10-2180, 2012 WL 2951554, at *10 (D. Md. 18 July 2012). Notably, the current, fifth edition of the DSM, which was issued on 13 May 2013 after the evaluations by Dr. Joseph at issue, abandoned use of the GAF scale because of "its lack of conceptual clarity . . . and questionable psychometrics in routine practice." Am. Psych. Assn., DSM-5 16 (2013). Nonetheless, in internal guidance messages, the Social Security Administration instructed that ALJs were to continue to treat GAF scores as opinion evidence that must be considered. *See* Soc. Sec. Admin., AM-13066, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication" (effective 22 July 2013); Soc. Sec. Admin., AM-13066 REV, "Global Assessment of Functioning (GAF) Evidence in Disability Adjudication – REV" ("AM-13066-REV") (effective 14 Oct. 2014).

Selected GAF scores have the following meanings:

> 90-81 Absent or minimal symptoms (e.g., mild anxiety before an exam), good functioning in all areas, interested and involved in a wide range of activities, socially effective, generally satisfied with life, no more than everyday problems or concerns (e.g., an occasional argument with family members).
>
> 80-71 If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork).
>
> 70-61 Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.
>
> 60-51 Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).
>
> 50-41 Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).
>
> 40-31 Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school).
>
> 30-21 Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends).

DSM–IV–TR 34 (format modified from original).

Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5.

The remaining reasons concern the lack of consistency with Dr. Joseph's opinions with the other evidence of record, another valid consideration. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Substantial evidence supports each of these findings of inconsistency.

Specifically, as to the GAF scores assigned by Dr. Joseph, he did, indeed, give plaintiff a GAF score of 60 at each of the evaluations he performed. *See* Tr. 579, 580, 582, 839. A score of 60 indicates only moderate symptoms. *See* DSM–IV–TR 34.

Evidence reviewed by the ALJ in his extensive summary of the evidence of plaintiff's mental impairments supports the other two bases for inconsistency cited by the ALJ—lack of documented observations by professionals of hallucinations and responses to internal stimuli, and lack of significant abnormal mental status findings besides depressed mood and affect. The ALJ stated in relevant part:

> Contrary to claimant's testimony that he has had multiple life-time psychiatric admissions, medical records document only one brief admission during the time period at issue. Specifically, claimant was treated involuntarily at an in-patient psychiatric facility from March 23, 2010 to March 26, 2010 due to depression with suicidal ideation relating to multiple social stressors. Claimant's discharge diagnosis was major depressive disorder, recurrent, severe, without psychosis. At the time of discharge, however, his mood was less depressed and anxious; he was not suicidal; and his sleep and appetite were good. (Exhibit 4F)
>
> Although claimant's primary care provider assessed him with depression in February 2010 and prescribed Lexapro and Trazodone, primary care treatment records throughout the time period at issue fail to document any significant abnormal mental status findings. (Exhibits 5F, 11F, and 20F) To the contrary, primary care treatment records generally reflect that claimant's mood was appropriate to the situation and that his judgment and insight were intact. (Exhibits 5F and 11F)
>
> Claimant did not receive any outpatient mental health treatment until a few days after his March 2010 inpatient hospitalization. Beginning in approximately April 2010, claimant began receiving mental health counseling and psychiatric

> medications from Coastal Southeastern United Care. Medications prescribed to claimant included Zoloft, Trazodone, and Lamictal. Although claimant alleged having suicidal ideation and disruptive hallucinations in association with this complaint, however, treatment records reflect few complaints to treating mental health providers of hallucinations until a visit in early February 2014. Claimant made few complaints of suicidal ideations, but he did routinely complain of feeling depressed secondary to social stressors, such as family issues and financial limitations. (Exhibits 7F, 18F, and 23F)
>
> Despite a diagnosis of schizoaffective disorder at least as early as February 2012 (Exhibit 18F), treating mental health providers failed to document observing claimant to be responding to internal stimuli. To the contrary, claimant's mental health providers typically documented that claimant demonstrated no indicators of psychotic processes. Claimant's mental health providers also did not regularly document other abnormal mental status findings aside from a depressed mood and affect. (Exhibits 7F, 18F, and 23F) In April 2010, for example, claimant was cooperative, demonstrated average intellect, and had adequate memory and impulse control as well as unremarkable perceptions. (Exhibit 7F) In June 2011, claimant's thinking was logical, his thought content was appropriate, his insight was normal, and his social judgment was intact. (Exhibit 7F)
>
> Treatment records in evidence document little, if any, treatment between approximately June 2010 and February 2012. (Exhibits 7F and 18F) Nevertheless, at a February 2012 visit at which claimant reported an escalation in his symptoms, it was noted claimant had had no medication for 113 days while he was incarcerated. Moreover, claimant's provider documented at this visit that, despite the gap in treatment, claimant had no signs of hallucinations, bizarre behavior, or other indicators of psychotic process. Additionally, his provider noted no other significant abnormal mental status findings at this visit. (Exhibit 18F/12) It is further relevant to note that following May 2012, the evidence contains no additional mental health treatment records until approximately February 2014. (Exhibits 18F and 23F)

Tr. 19 ¶ 5.

The court concludes that the ALJ's assessment of the medical opinions of Dr. Joseph is based on proper legal standards and supported by substantial evidence. The court accordingly rejects plaintiff's challenge to it.

### C. Dr. King's Opinions

As discussed previously, Dr. King issued a letter dated 26 February 2014 portraying plaintiff's mental impairments as disabling. The letter reads:

> Robert Cooke is my patient, and has been under my care since 2012. I am familiar with his history and with the functional limitations imposed by his disability. He meets the definition of disability under the Americans with Disabilities Act, the Fair Housing Act, and the Rehabilitation Act of 1973.
>
> Robert receives ACTT services with CSEUC. I am his acting psychiatrist with the ACT team. He is making progress toward meeting his goals outlined in his Person Centered Plan, however continues to have daily struggles in meeting some of his goals. Robert has a severe and persistent DSM V diagnosis of 297.70 of schizoaffective disorder that seriously impairs his functioning in the home and community. He actively feels spiders and snakes are all around him, coming into his shed where he lives away from his wife and stepdaughter.[13] Robert has significant difficulties maintaining consistent employment at a self-sustaining level. Robert continues to have difficulties performing the range of practical daily living task[s] required for basic adult function in the community. Robert's insight remains poor and he is in need of much direction and reassurance and support.
>
> If I can be of any further assistance, please contact the office at (910) 755-5222 Fax (910) 755-5255.

Tr. 937.

> The ALJ gave Dr. King's opinions little weight. Tr. 23 ¶ 5. He explained:
>
> In a February 26, 2014 letter, claimant's treating psychiatrist, Lunsford King, M.D., reported that claimant's schizoaffective disorder seriously impairs his functioning in the home and community; that claimant feels spiders and snakes are all around him; that claimant has significant difficulties maintaining consistent employment at a self-sustaining level; that claimant's insight remains poor; and that claimant is in need of much direction, reassurance, and support. (Exhibit 23F) For the same reasons as I assign little weight to Dr. Joseph's opinion, I also give little weight to Dr. King's opinion. In addition, while Dr. King stated that he had been treating claimant since 2012, the evidence of record fails to document that claimant received any mental health treatment between approximately May 2012 and February 2014. (See exhibits 18F and 23F) While Dr. King apparently did evaluate claimant on February 24, 2014, the record documents little, if any, additional treatment provided by Dr. King. (Exhibit 23F)

Tr. 23 ¶ 5.

---

[13] At the first hearing, plaintiff explained that the shed, which has electricity and cable but no plumbing, is behind the two-bedroom mobile home where his wife, daughter, mother-in-law, father-in-law, and mother-in-law's brother live and that he lives in the shed because of crowding in the mobile home. Tr. 66; *see also* Tr. 523, 565, 567, 572, 574, 575, 588, 832, 834, 938.

The court has already explained how the reasons given by the ALJ for discounting Dr. Joseph's opinions are proper. They are also, of course, proper with respect to Dr. King's opinions. The additional reasons cited by the ALJ for discounting Dr. King's opinions—the gap in treatment of plaintiff and paucity of treatment records for Dr. King—are proper as well. They bear on the lack of consistency of Dr. King's opinions with the record and are supported by substantial evidence. The court accordingly rejects plaintiff's challenge to the ALJ's assessment of Dr. King's opinions.

## VI. CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 26) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 21) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 17 August 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 3rd day of August 2017.

_____
James E. Gates
United States Magistrate Judge